UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
DEBORAH L. BOARDMAN
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-7810
Fax: (410) 962-2577
MDD_DLBChambers@mdd.uscourts.gov

September 1, 2021

LETTER TO COUNSEL

RE: *India G. v. Kijakazi*[1]
Civil No. DLB-20-1704

Dear Counsel:

On June 10, 2020, plaintiff petitioned this Court to review the Social Security Administration's ("SSA's") final decision to deny her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). ECF 1. I have considered the parties' cross-motions for summary judgment. *See* Pl.'s Mem., ECF 12; Def.'s Mem., ECF 13. I find no hearing necessary. *See* Loc. R. 105.6 (D. Md. 2021). This Court must uphold the denial if the SSA employed correct legal standards and made findings supported by substantial evidence. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). Under that standard, I will deny both motions, reverse the Commissioner's decision in part, and remand the case to the Commissioner for further consideration. This letter explains my rationale.

Plaintiff filed her DIB claim on September 7, 2016, and her SSI claim on April 25, 2017, alleging in both an onset date of August 15, 2012. Administrative Transcript ("Tr.") 15, 228–40. The SSA denied her claims initially and on reconsideration. Tr. 86, 100, 117–18. An Administrative Law Judge ("ALJ") held a hearing on April 8, 2019. Tr. 32–72. Following the hearing, the ALJ determined plaintiff was not disabled within the meaning of the Social Security Act during the relevant time frame. Tr. 12–31. Because the Appeals Council denied plaintiff's request for review, the ALJ's decision constitutes the final, reviewable decision of the SSA. Tr. 1–6; *see Sims v. Apfel*, 530 U.S. 103, 106-07 (2000); 20 C.F.R. § 422.210(a).

---

[1] Kilolo Kijakazi recently became the Acting Commissioner of Social Security. *Office of the Commissioner*, SOC. SEC. ADMIN., www.ssa.gov/org/coss.htm (last visited July 21, 2021). Pursuant to the last sentence of 42 U.S.C. § 405(g), actions brought under that Section "survive notwithstanding any change in person occupying the office of the Commissioner of Social Security." Substitution of the successor as the party in interest is automatic. Fed. R. Civ. P. 25(d).

*India G. v. Kijakazi*
Civil No. DLB-20-1704
September 1, 2021
Page 2

The ALJ found plaintiff severely impaired by "fibromyalgia, obesity[,] and gout." Tr. 17–18. Despite these impairments, the ALJ determined plaintiff retained the residual functional capacity ("RFC") to "perform the full range of light work as defined in 20 CFR 404.1567(b) and 416.967(b)." Tr. 19. After considering the testimony of a vocational expert ("VE"), the ALJ determined plaintiff could perform her past relevant work as an adult education teacher. Tr. 23–24. The ALJ alternatively found that plaintiff was capable of performing other jobs existing in the national economy in significant numbers. Tr. 24–25. Therefore, the ALJ concluded plaintiff was not disabled. Tr. 25.

On appeal, plaintiff argues that the ALJ failed to perform a function-by-function assessment, erroneously weighed the opinion of plaintiff's treating provider, and erroneously evaluated the limiting effects of plaintiff's fibromyalgia. I agree that the ALJ erred in evaluating plaintiff's fibromyalgia. Accordingly, I remand, but I express no opinion as to plaintiff's ultimate entitlement to benefits.

Fibromyalgia is assessed using a two-step framework. 20 C.F.R. §§ 404.1529, 416.929; Social Security Ruling ("SSR") 12-2p, 2012 WL 3104869 (July 25, 2012). First, ALJs must assess the objective medical evidence and determine whether the plaintiff has a medically determinable impairment. *Id.* §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). Second, if the ALJ finds a medically determinable impairment, the ALJ assesses the plaintiff's symptoms to determine how the symptoms' intensity and persistence affect the plaintiff's ability to work. *See* 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p. At the second step, the plaintiff is not generally required to produce objective evidence of the pain itself or its intensity. *Walker v. Bowen*, 889 F.2d 47, 49 (4th Cir. 1989). The Fourth Circuit recently held that this evidentiary rule is particularly forceful in cases where plaintiffs are impaired by fibromyalgia—"a disease whose symptoms are entirely subjective, with the exception of trigger-point evidence." *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 97 (4th Cir. 2020) (citing *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996)). Because "[o]bjective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of . . . fibromyalgia," the Fourth Circuit held that "ALJs may not rely on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." *Id.*

In this case, the ALJ found that plaintiff's "statements concerning the intensity, persistence[,] and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in [his] decision." Tr. 20. The ALJ then immediately used normal, objective results to discount plaintiff's subjective complaints arising from her fibromyalgia:

> The record demonstrates that the claimant retained a largely normal physical functional capacity. For example, her lungs were clear to auscultation bilaterally. Her extremities had no cyanosis, clubbing, or edema. Her sensation was grossly intact. Her heart had regular rate and rhythm. Her extremities had [a] normal range of motion. Her neck had full range of motion. Her balance was normal. Her

> reflexes were normal. The results of the claimant's physical examinations are consistent with the above residual functional capacity. The preponderance of medical evidence does not support the severity of limitation alleged by the claimant. It is true that the claimant reported that she uses a cane which was prescribed. However, recent detailed examinations showed full muscle strength and normal muscle bulk, full range of motion, normal gait and stance, no deformities and normal spine alignment.
>
> Although the claimant testified to having allegedly disabling symptoms, the record demonstrates that the claimant's impairments are not as severe as alleged. Turning to her fibromyalgia, the claimant underwent a rheumatology consultation on June 11, 2014. The claimant was encouraged to see a mental health counselor, and she was referred to undergo a sleep study as well as physical therapy. She was instructed to follow up in 9-10 weeks or sooner. The claimant followed up on August 28, 2014, and reported that she had completed physical therapy and felt better overall. She was prescribed a second course of physical therapy and was encouraged to continue her low-impact exercise program. The claimant did not follow up until April 9, 2015. The treatment notes reported that the claimant had not been exercising. She was prescribed Trazodone 50 to 100 mg at bedtime as needed, and instructed to follow up in three months or sooner. The record reveals essentially routine treatment for the remainder of 2015 and 2018. The claimant also underwent a pain management consultation on November 27, 2018, and she was started on Baclofen 10 mg three times a day, Nortriptyline 10 mg, Percocet 1 tablet twice a day, and Ibuprofen 800 mg three times a day, and she was prescribed aqua therapy. She was instructed to follow up in one month.

Tr. 20–21 (internal citations omitted). It is clear from the foregoing citation that the ALJ used normal, objective evidence as a factor in discounting plaintiff's subjective complaints about the limiting effects of her fibromyalgia.[2] *See Arakas*, 983 F.3d at 97. This is error after *Arakas*. *See id.*

The Commissioner argues that "an ALJ does not err simply by considering objective evidence as part of his evaluation." Def.'s Mem. 7. The Commissioner points out that objective evidence is required to establish the existence of a medically determinable impairment, *see id.* at 5–6, and that "the Fourth Circuit made clear [in *Craig*, 76 F.3d 585,] that, while subjective allegations may not be discredited solely because they are not substantiated by objective evidence, that objective medical evidence and other objective evidence is nevertheless 'crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to

---

[2] Although the ALJ does not explicitly state that she was addressing fibromyalgia in the foregoing paragraphs, she clearly was. The medical records to which the ALJ refers predate 2018 and concern fibromyalgia, not gout. Plaintiff was not diagnosed with gout until 2018. *See* Tr. 88 (showing plaintiff did not list gout as an impairment at the reconsideration stage of her claim); Tr. 92 (showing plaintiff did not have gout has a medically determinable impairment as late as February 24, 2017); Tr. 864 (containing a September 12, 2018 letter from plaintiff's physician in which the physician noted plaintiff was "diagnosed with [g]out last month").

*India G. v. Kijakazi*
Civil No. DLB-20-1704
September 1, 2021
Page 4

work,'" *see id.* at 6 (internal citation omitted). The Commissioner also notes that a claimant's allegations about her pain "need not be accepted to the extent they are inconsistent with the available evidence." *Id.* at 6–7 (citing *Craig*, 76 F.3d at 595; 20 C.F.R. §§ 404.1529(c), 416.929(c)). These arguments are without merit.

  First, the issue in this case is not whether the ALJ appropriately used objective evidence in finding the existence of a medically determinable impairment. The issue in this case stems from the second part of the two-step framework: the ALJ's evaluation of plaintiff's subjective complaints about the limiting effects of her fibromyalgia. *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 12-2p, 2012 WL 3104869, at *5. And, although the two parts of that framework are related, the analysis during each part is legally distinct, particularly with respect to the significance of objective evidence. *Compare* 20 C.F.R. §§ 404.1529(a), 416.929(a) ("There must be objective medical evidence from an acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged . . . .) *with* 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("[W]e will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements.").

  Second and with respect to the Commissioner's citation to *Craig*, 76 F.3d at 595, and the regulations, the regulations provide that adjudicators "will evaluate [a claimant's] statements *in relation to* the objective medical evidence and other evidence, in reaching a conclusion as to whether [the claimant] is disabled." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4) (emphasis added). In instances of fibromyalgia, this regulation and the body of law stemming therefrom must be interpreted and applied through the lens of *Arakas*. The Fourth Circuit pointed out that, with respect to fibromyalgia, the objective medical evidence bears little to no relation to the disabling limitations caused by that impairment. *See Arakas*, 983 F.3d at 97 ("Objective indicators such as normal clinical and laboratory results simply have no relevance to the severity, persistence, or limiting effects of . . . fibromyalgia, based on the current medical understanding of the disease."). Phrased differently, the Fourth Circuit noted that normal, objective clinical and laboratory results are not inconsistent with allegations of disabling pain. Thus, after *Arakas*, the use of that objective medical evidence *to discount* the plaintiff's complaints of the disease's limiting effects is improper in the Fourth Circuit.

  The Commissioner also attempts to distinguish this case from *Arakas* by arguing that the ALJ in this case "did not state that the lack of significant clinical findings was inconsistent with what one would expect if [plaintiff] was disabled, and did not otherwise indicate that a lack of objective evidence 'was his chief, if not definitive, reason' for rejecting [plaintiff's]" subjective complaints stemming from her fibromyalgia. *See* Def.'s Mem. 7 (citing *Arakas*, 983 F.3d at 97). Relatedly, the Commissioner argues that the ALJ did not "effectively requir[e]" objective evidence nor "[rely] principally" on normal examination findings to discount [plaintiff's] subjective complaints." *Id.* (citing *Arakas*, 983 F.3d at 96–97). The Commissioner points to the ALJ's discussion of plaintiff's medication, physical therapy, pain management consultation, activities of

daily living, and the opinion evidence as grounds for discounting plaintiff's subjective complaints. *Id.* at 7–8. These arguments, too, are unpersuasive.

First, this Court has considered and rejected the Commissioner's narrow reading of *Arakas* because it fails to acknowledge the precedential value of that case. *See Charlene S. v. Saul*, No. DLB-20-853, 2021 WL 2141501, at *2–3 (D. Md. May 26, 2021) (distinguishing between the dual reasons for remand in part III.A of *Arakas*, one of which was a reiteration of existing law and the other of which established new precedent with respect to fibromyalgia). Second, the ALJ in this case did specifically state that the medical evidence was inconsistent with plaintiff's statements of the disease's limiting effects. *See* Tr. 20 ("The preponderance of medical evidence does not support the severity of limitation alleged by the claimant."). Third, the ALJ's discussion of other evidence relating to plaintiff's physical capacity (her medications, physical therapy, pain management consultation, activities of daily living, and the opinion evidence) is immaterial to whether the ALJ committed error under *Arakas* by "rely[ing] on objective medical evidence (or lack thereof)—even as just one of multiple factors—to discount a claimant's subjective complaints regarding symptoms of fibromyalgia." *See* 983 F.3d at 97. To the extent that the Commissioner's argument that the ALJ considered other non-medical evidence to discount plaintiff's subjective complaints may be fairly read as a harmless error argument, I disagree. In this case, the plaintiff alleged disability due, in large part, to the pain caused by her fibromyalgia and gout. *See* Tr. 32–72. Thus, the ALJ's evaluation of those complaints is central to the success—or failure—of plaintiff's claim. Additionally, in this case and as evidenced by the excerpted paragraphs from the ALJ's decision, the ALJ heavily relied on normal, objective results to discount plaintiff's subjective complaints, even where some of those complaints had already been assessed by medical professionals. Indeed, the ALJ rejected physical limitations identified by both state agency consultants and plaintiff's own physician with stock language referencing the same medical evidence reproduced several times in the decision. *See, e.g.*, Tr. 22 (giving "some weight" to the opinion of state agency physician E. Harris, M.D. but noting that "the preponderance of record evidence does not support the postural, manipulative, or environmental limitations . . . [because,] [f]or example, the record demonstrates that the claimant's extremities had normal range of motion . . . [and that] [h]er neck had full range of motion[,] . . . [h]er balance was normal[, and] . . . [h]er reflexes were normal"); *see also* Tr. 23. Remand is therefore appropriate for the ALJ to determine whether legally permissible reasoning produces the same or a different result.

Finally, because I remand on other grounds, I decline to decide whether the ALJ erred in evaluating the opinion of plaintiff's treating provider or in failing to perform a function-by-function assessment. The ALJ may consider these arguments on remand.

For the reasons set forth herein, plaintiff's motion for summary judgment, ECF 12, is denied, and the Commissioner's motion for summary judgment, ECF 13, is denied. Pursuant to sentence four of 42 U.S.C. § 405(g), the SSA's judgment is reversed in part due to inadequate analysis. The case is remanded for further proceedings in accordance with this opinion.

*India G. v. Kijakazi*
Civil No. DLB-20-1704
September 1, 2021
Page 6

      Despite the informal nature of this letter, it should be flagged as an opinion. A separate order follows.

                                   Sincerely yours,

                                        /s/

                                   Deborah L. Boardman
                                   United States District Judge